UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FUK LIN PAU,<br>        *Plaintiff*,<br>        *v.*<br>JIAN LE CHEN d/b/a "CHINA KING", NEW<br>CHINA KING LLC d/b/a "NEW CHINA KING",<br>FANG RONG ZHENG<br>        *Defendants*. | Civil No. 3:14cv841(JBA)<br><br>October 21, 2015 |

**MEMORANDUM OF DECISION**

On May 29, 2015, the Court held a bench trial on Plaintiff Fuk Lin Pau's claims that Defendants Jian Le Chen, New China King LLC, and Fang Rong Zheng violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq.*, in connection with their employment of Plaintiff.  Plaintiff seeks back pay and damages in the amount of $104,022.60.  For the following reasons, the Court concludes that Defendant Chen is liable to Mr. Pau for violations of the FLSA and CMWA in the amount of $81,648.15 but that Defendants New China King and Fang Rong Zheng are not liable to Plaintiff.

## I.    Findings of Fact

Based on the evidence presented during the bench trial, the Court makes the following findings of fact.

### A.  China King

China King is a Chinese food restaurant located in Stamford, CT, owned and managed by Jian Le Chen.[1]  The parties stipulated that Fuk Lin Pau worked for China King as an employee from 2005 until July 24, 2013.  (Pre-Trial Order [Doc. # 23] ¶ 7.)  For purposes of this lawsuit however, the parties agree that only the period from June 10, 2011 to July 24, 2013 is relevant.[2]  Both Mr. Pau and Defendant Chen testified that for the entirety of the period June 10, 2011 to July 24, 2013, Mr. Pau was a full-time employee of China King, responsible for deliveries and miscellaneous tasks such as re-stocking sodas.

#### 1.  Wages

There is no dispute that Mr. Pau was paid $2,200 in cash once a month.  The parties do however dispute the amount of additional payments Mr. Pau received in the form of tips/delivery surcharges, lodging, and meals, and whether Mr. Pau was compensated for gas and other delivery-related expenses.

---

[1] In their Answer and Amended Answer, Defendants admitted that the restaurant was co-owned and managed by Jian Le Chen's wife, Defendant Fang Rong Zheng.  (Am. Answer [Doc. # 25] ¶¶ 9, 11.)  However, at trial, counsel informed the Court that the admission was a scrivener's error, and both Defendant Chen and Defendant Zheng offered uncontested testimony that Ms. Zheng neither owned nor managed China King.

[2] *See* discussion of statute of limitations, *infra*, at 17.

### a.  Tips/Surcharge

Defendant Chen and Anluo Chen (no relation to Defendant Chen), who worked at the counter at China King, stated that every delivery customer paid a $1 surcharge/tip that was given to Mr. Pau.  Defendant Chen seeks credit for these tips in the Court's minimum wage and overtime calculations.  For the following reasons, however, the Court finds that Defendant Chen should not receive a tip credit.

The CMWA does not permit a tip credit where employers do not record such tips "on a weekly basis as a separate item in the wage record."  Conn. Agencies Regs. 31-60-2(a).  Further, the law requires that each employer claiming a tip credit "provide substantial evidence that the amount claimed . . . was received by the employee."  *Id.*  Defendant here has neither kept the required records nor provided any evidence that Mr. Pau actually received the tips claimed by Defendant Chen.

Under the FLSA, in order to benefit from the tip credit, an employer must inform "its tipped employees in advance of the employer's use of the tip credit."  29 C.F.R. § 531.51(b).  "Courts have noted that the notice requirement is a firm one" and "[e]mployers bear the burden of showing that they have satisfied this requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287–88 (S.D.N.Y. 2011) (internal quotation marks, citations, and brackets omitted).  "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken."  *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994).  In this case, the

Court finds that Defendant has not met his burden of demonstrating notice and he is therefore not entitled to a tip credit.[3]

### b. Lodging and Meals

Defendant Chen testified that he provided Mr. Pau with housing for every day that Mr. Pau worked at China King between June 10, 2011 and July 24, 2013.[4]  His description of the lodging he provided was sparse, stating only that it was an apartment above the restaurant and that Mr. Pau shared his room with one other person.  With regard to meals, Defendant Chen testified that he provided all of his employees, including Mr. Pau, with three meals a day.  Breakfast was rice, and lunch and dinner consisted of two dishes each—one fish or meat dish and one vegetable dish—as well as a soup.  Mr. Pau did not dispute Defendant Chen's testimony with regard to either room or board, and the Court finds both to be credible.

Importantly, however, Defendant Chen presented no evidence regarding the cost of lodging and meals, nor any evidence demonstrating that he maintained records of those costs.  Under the regulations governing the FLSA, if an employee works more than forty hours in any workweek and "any additions to the wages paid [such as room and board] are part of wages, . . . the employer shall maintain records showing on a workweek basis those additions to . . . wages." 29 C.F.R. § 516.27.  Because Defendant Chen has not "produce[d] contemporary records reflecting the number and actual cost of the meals

---

[3] The Court need not reach the questions of whether the money Mr. Pau received is properly considered a tip and whether Mr. Pau qualifies as a "tipped employee" under federal and/or state law.

[4] Defendant Chen clarified that on his days off, Mr. Pau lived in New York.

4

provided to [Mr. Pau] and the value of the housing that [he] occupied," Defendant is not entitled to credit for meals or lodging under the FLSA.  *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009) ("Because Tasty Buffet did not comply with the record-keeping requirements, the district court properly disallowed an offset for meals and lodging supplied to its employees.").

He is also not entitled to credit under the CMWA.  The regulations governing the CMWA (as they existed during the relevant time period) provide that "[w]ages paid to any employee may include the reasonable value of board and/or lodging . . . if such condition is made known to and accepted by the employee at the time of hiring."  Conn. Agencies Regs. 31-60-3(b).   In this case, however, Defendant Chen presented no evidence that he informed Mr. Pau when he was hired that part of his wages would be in the form of meals and lodging.  Therefore, Defendant Chen will not receive credit for room and board in the calculation of Mr. Pau's regular rate of pay.

### c.  Expenses

In his Complaint, Mr. Pau contends that he purchased a vehicle in order to make deliveries for Defendants and that he "spent about $450 per month on gas, oil change[s], car maintenance and repair," totaling $13,500, which Defendants "refus[ed] to reimburse."  (Compl. [Doc. # 1] ¶ 22, Pl.'s Ex. 1.)

Under the FLSA, "[v]ehicles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment."  *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010).  Employers "may require employees to bear the costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce

their wage below the required minimum." *Id.* at 511–12; *see* 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA].").

Here, however, Mr. Pau has offered neither testimony nor admissible exhibits to substantiate his claim with regard to expenses. His attorney referenced the expenses in both his opening and closing statements, but his attorney's statements are not evidence, and Mr. Pau himself made no claim that he had expended his own money on work-related expenses. The Court thus finds that Mr. Pau has not proved that he is owed reimbursement for employment-related expenses.

### 2. Hours

There is no dispute that Mr. Pau worked from opening until closing six days a week—11 a.m. to 11 p.m. Tuesday through Thursday, 11 a.m. to 12 a.m. Friday and Saturday, and 12 p.m. to 11 p.m. on Sundays, for a total of 73 hours per week. Mr. Pau contends, however, that he additionally worked two extra hours prior to the opening of the restaurant, which Defendant Chen disputes. Mr. Pau's testimony on this point is not a model of clarity, but this appears to be the result of confusion and poor translation rather than deception.

Mr. Pau initially testified that he worked the two extra morning hours every day. On cross-examination, he clarified that he got one day off a week—generally Mondays. He also explained that although the restaurant did not open until 11 a.m., for two years,

he volunteered to work from 9 a.m. to 11 a.m. to help Defendant Chen prepare, package up, and deliver breakfasts when needed.   A moment later, however, he contradicted himself, asserting that he worked from 9 a.m. to 11 a.m. every day, not only as needed. Mr. Pau's deposition, part of which was read into evidence by Defendant, was similarly unclear.  There, Mr. Pau first claimed that he "sometimes" began work at 9 a.m., then that he worked "extra from nine to eleven" "every day," and then immediately thereafter appeared to state that he only worked the extra hours when there was extra work.  He was consistent throughout his deposition and testimony however, that at least when there was a need for it, he worked extra hours in the mornings, for which he was not paid. Specifically, he recalled one period of time in which Defendant Chen asked him to prepare one hundred boxes of food every day to be delivered to a construction site.

Anluo Chen, who lived on the same floor of the building as Mr. Pau (above the restaurant), testified that he was unaware of Mr. Pau ever beginning work at 9 a.m.  He stated that he had observed Mr. Pau going downstairs before 10:45 a.m. on occasion, but that he was going to exercise, not to work.  On cross-examination, however, he admitted that most mornings, he was asleep at 9 a.m. and really did not know what time Mr. Pau left.  Moreover, he was away in China for two to four-month stretches each year and was not in a position to observe Mr. Pau during that time.

Defendant Chen categorically denied that Mr. Pau had ever begun work before 11 a.m. and stated that he did not even open the restaurant before 10:45 a.m. Monday through Saturday and 11:45 a.m. on Sundays, and that China King had never prepared breakfasts for a construction site.  However, he admitted that he did not keep records of Mr. Pau's working hours.

The law is clear that where, as here, an employer fails to keep proper records as required by the CMWA and FLSA, "'an employee has carried out his burden'" of proving that he worked uncompensated overtime "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Arasimowicz v. All Panel Systems, LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.C. 680, 687 (1946), *superseded by statute on other grounds by IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)) (FLSA context); *see Reich v. SNET Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) ("When a defendant . . . fails to maintain employment records . . . an employee . . . may submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." (internal quotation marks omitted)); *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 234 (2003) (applying "the burden shifting scheme articulated in *Anderson*" to CMWA claims where the employer fails to keep adequate records).

"An employee's burden to produce sufficient evidence is low and can be met by that employee's recollection alone." *Arasimowicz*, 948 F. Supp. 2d at 224 (internal quotation marks omitted). "The rationale for this relaxed burden is apparent. Once liability for wage violations has been established, the uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. The alternative rule would incent[ivize] employers to violate their statutory record-keeping

8

duty." *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 CIV. 3043 (PAE), 2015 WL 1061501, at *12 (S.D.N.Y. Mar. 11, 2015) (internal quotation marks, citations, and brackets omitted).

"Once an employee has produced sufficient evidence of uncompensated overtime and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,'" *Arasimowicz*, 948 F. Supp. 2d at 224 (quoting *Anderson*, 328 U.S. at 687–88), "the fact of damage is established, and the only potential uncertainty is the amount," *Reich*, 121 F.3d at 71. At this point, "the burden shifts to the employer to provide evidence showing 'the precise amount of work performed' or challenging the reasonable inference drawn from the employee's evidence." *Arasimowicz*, 948 F. Supp. 2d at 224 (quoting *Anderson*, 328 U.S. at 687–88).

Here, it is uncontested that Mr. Pau worked more than forty hours per week; the question is only how much more than forty hours he worked. Defendant Chen admitted at trial that Plaintiff worked 73 hours per week; Plaintiff claims he worked 80.5 hours per week. The parties only dispute whether Mr. Pau worked two-hour shifts in the morning before the restaurant opened, as he claims. Mr. Pau's testimony regarding whether he worked the two extra hours every day or only some days was not entirely consistent, but the Court finds credible his assertion that he did work two hours in the morning on at least some days. Because Mr. Pau's 80.5 hour estimate includes only 7.5 hours of morning work, which compensates him for morning work a little more than half of each week rather than for six days a week, his testimony is sufficient to meet his burden. *See Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among

the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet [his] burden through estimates based on his own recollection.").

The burden then shifts to Defendant Chen to either come forward with evidence showing the precise amount of work performed or challenging the reasonable inference drawn from Mr. Pau's evidence.  Defendant attempted to meet this burden in three ways: (1) by testifying that he never opened the restaurant before 10:45 a.m., so Mr. Pau could not have worked the morning hours he claimed to have worked, (2) by attempting to expose inconsistencies in Mr. Pau's testimony, and (3) by offering the testimony of Anluo Chen that Mr. Pau did not work in the mornings.  This evidence does not, however, cast sufficient doubt on Plaintiff's recollection of his hours to overcome the inference arising from his testimony.  *Cf. Jiao v. Shi Ya Chen*, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *7 (S.D.N.Y. Mar. 30, 2007) (finding that the defendants failed to meet their burden where the court found the plaintiff's testimony to be credible and did not find defendants' testimony to be credible); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005) (same).

Defendant Chen's credibility is seriously undermined by his admission at trial that Mr. Pau routinely worked overtime for which he was not compensated, an allegation he denied in his Amended Answer.   (Am. Answer [Doc. # 26], Pl.'s Ex. 2 ¶ 33.) Furthermore, as stated above, the Court does not believe that the inconsistencies in Mr. Pau's testimony are indicative of lack of credibility.   Mr. Pau credibly and repeatedly testified that he worked extra hours in the mornings, at least some of the time, helping Defendant Chen to package food and delivering it.  The Court again notes that Mr. Pau does not seek compensation for two extra hours every morning, which would add twelve

hours to his workweek; rather, he seeks compensation for only seven and a half extra hours per week. Finally, the Court does not find persuasive the testimony of Anluo Chen regarding Mr. Pau's hours because by his own admission, he was generally not in a position to observe whether or not Mr. Pau worked in the mornings. Because Defendant Chen has not met his burden, the Court finds that, in accord with Plaintiff's claim, Mr. Pau worked approximately 80.5 hours per week. *See Hui Luo v. L & S Acupuncture, P.C.*, No. 14 CIV. 1003 (BMC), 2015 WL 1055084, at *6 (E.D.N.Y. Jan. 23, 2015) ("Even where the hours worked and compensation received are not proven with certainty, district courts have found FLSA overtime . . . violations (and awarded commensurate damages)."); *see also Anderson*, 328 U.S. at 688 ("If the employer fails to [meet its burden], the court may then award damages to the employee, even though the result be only approximate.").

### B.  New China King

Like China King, New China King is a Chinese food restaurant located in Stamford, CT.  Ms. Zheng testified that she was the sole member of New China King LLC from April 2011 to January 2013, but she denied that Mr. Pau ever worked for New China King during that period.  Mr. Pau, for his part, asserted that he worked at New China King "very little"—one or two days a month.  However, the two regular deliverymen for New China King, Xin Yong Lin and Jin Xin Chen (Defendant Chen's brother), testified that they were not aware that Mr. Pau had ever worked as a delivery person (or in any other capacity) for the restaurant.  They acknowledged that they each had a day off every week, but Ms. Zheng was emphatic that even when one of them was off, she did not bring in additional help.

Because Mr. Pau's claim that he was an employee of New China King is supported only by his own scant testimony and is disputed by two employees of New China King as well as the owner of New China King, the Court finds that Plaintiff has not met his burden of demonstrating that it is more likely than not that he was an employee of New China King.

## II.    Conclusions of Law

Plaintiff contends that Defendants violated the FLSA and CMWA by failing to: (1) keep adequate records of his employment, and post or provide him with information regarding his rights and the terms and conditions of his employment, (2) pay him for all hours worked, (3) pay him overtime for hours worked in excess of 40 hours/week, and (4) reimburse him for work-related expenses.

Because, as discussed above, Mr. Pau has not shown that he was an employee of New China King, his claims with regard to New China King are denied, and the Court will hereinafter focus only on his claims against Defendant Chen with regard to China King.

### A.  Record-Keeping and Notice-Posting Claims

Both federal and state law require employers to maintain certain records in connection with their employees' employment and provide their employees with information about the conditions of their employment.

Under the CMWA, "[e]ach employer shall: (1) Advise his employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules, and (2) make available to his employees, either in writing or through a posted notice . . . any employment practices and policies or change therein with regard to wages,

vacation pay, sick leave, health and welfare benefits and comparable matters." Conn. Gen. Stat. § 31-71f. In addition, "[w]ith each wage payment," every employer must "furnish to each employee in writing a record of hours worked, the gross earnings showing straight time and overtime as separate entries, itemized deductions and net earnings." Conn. Gen. Stat. § 31-13a. Finally, Connecticut law requires each employer to "keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the wages paid . . . to[] each employee." Conn. Gen. Stat. § 31-66.

The FLSA similarly mandates that employers "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them], and [that they] preserve such records for such periods of time, and . . . make such reports therefrom to the Administrator as he shall prescribe by regulation or order." 29 U.S.C. § 211(c).

Although Defendants admit to violating these provisions of the FLSA and CMWA, neither federal nor state law provides a private right of action to plaintiffs to enforce the record-keeping and notice-posting requirements in a civil action. *See Calderon v. Dinan & Dinan PC*, No. 3:05CV1341 (JBA), 2006 WL 1646157, at *7 (D. Conn. June 13, 2006) ("Enforcement of [Conn. Gen. Stat. § 31-13a] is committed to the Department of Labor. . . . [I]t does not appear that an individual right of action exists for enforcement."); Conn. Gen. Stat. § 31-69 (providing for fines for employers who violate record-keeping requirements); Conn. Gen. Stat. § 31-72 (creating a private right of action "[w]hen any employer fails to pay an employee wages in accordance with the provisions of [the CMWA]"); *Cunningham v. Elec. Data Sys. Corp.*, 579 F. Supp. 2d 538, 542–43

(S.D.N.Y. 2008) ("[T]here is no private right of action to enforce [29 U.S.C. § 211(c)]."). Therefore, to the extent Plaintiff seeks damages for Defendant's violations of the FLSA's and CMWA's record-keeping and notice-posting requirements, his claim is denied.

### B.  Employer/Employee Status

The Court now turns to Plaintiff's wage and hour claims.  To be liable under the FLSA or the CMWA, one must be an "employer."  Federal law defines this as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and state law similarly defines it as any "owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees," Conn. Gen. Stat. § 31-58(d).  An employee under the FLSA is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and under the CMWA, "any individual employed or permitted to work by an employer," Conn. Gen. Stat. § 31-58(e).  In this case, the parties have stipulated that Mr. Pau was an employee of China King (Pre-Trial Order ¶ 8) from at least June 10, 2011 to July 24, 2013 and that Jian Le Chen is individually liable as an employer under both the CMWA and FLSA (*id.* ¶ 9).

### C.  Wage and Hour Claims

During the period of time relevant to this case, the minimum wage in Connecticut was $8.25/hour.  Conn. Gen. Stat. § 31-58(i).  The federal minimum wage was $7.25/hour. 29 U.S.C. § 206(a).  In addition, both the FLSA and CMWA mandate that "no employer . . . employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C.

14

§ 207(a)(1); *see* Conn. Gen. Stat. § 31-76c.  The "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e); Conn. Gen. Stat. § 31-76b(1).  However, the regular rate "may in no event be less than the statutory minimum." 29 C.F.R. § 778.107. "Where an employee is unlawfully paid less than the minimum wage, the overtime calculation must be based on the minimum wage to which he was entitled." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009).

As discussed above, the Court finds that Mr. Pau worked 80.5 hours per week and was compensated $2,200 per month.  Although tips, room, and board are generally included in determining an employee's regular rate of pay, 29 C.F.R. § 531.60; Conn. Agencies Regs. 31-60-2 & 31-60-3, because the Court has determined that Defendant Chen is not entitled to such credit here, only the $2,200 per month paid to Mr. Pau will be considered.

Where, as here, an employee is paid a fixed monthly wage, for purposes of assessing minimum wage and overtime claims, that wage "must be reduced to its workweek equivalent . . . by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)." 29 C.F.R. § 778.113.  Applying that methodology here yields a weekly wage of $507.69.  To determine the regular hourly rate of pay, on which time and a half must be paid, that figure is divided by "the number of hours which the salary is intended to compensate." *Id.*  In this case, however, dividing $507.69 by 80.5 yields an hourly rate of $6.31 which is below both the federal and state minimum wages for the relevant time period.  The Court thus finds that Defendant Chen has violated both the minimum wage and overtime provisions of the FLSA and CMWA.

### D.  Statute of Limitations—Willfulness

The statute of limitations under both the CMWA and FLSA is two years.  *See* Conn. Gen. Stat. § 52-696; 29 U.S.C. § 255(a).  However, under the FLSA, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  A violation of the FLSA is "willful" if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, (1988).  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (internal quotation marks and brackets omitted).  "The plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes."  *Id.* (internal quotation marks omitted).

The Court finds that Plaintiff has met this burden.  Defendant Chen testified that he owned two restaurants and that his wife also owned a restaurant, so he was well-versed in the restaurant business.  He further testified that he employed an accountant in New York, and he implied that he was familiar with federal and New York law regarding minimum wage and overtime requirements, albeit not Connecticut law.[5]  Based on this testimony, the Court finds that Defendant Chen's violations were willful.  Even if Defendant Chen was not familiar with Connecticut law specifically, he appears to have

---

[5] When asked if he was "aware of the federal and state laws about paying workers like Mr. Pau," Defendant Chen replied that he did not know the law in Connecticut "because this is the regular pay according to the restaurant from New York."  It is not clear exactly what Defendant Chen meant by his response, but it appears to imply that he was familiar with federal and New York law but not Connecticut law.

been familiar with federal law.  His actions in determining his legal obligations to Mr. Pau were at the very least reckless.  *Cf. Doo Nam Yang*, 427 F. Supp. 2d at 337 (finding willfulness where the defendant "repeatedly stated that he knew he was required to pay the overtime premium" but failed to do so).  As such, the three-year statute of limitations shall apply, making the relevant time period under the FLSA June 10, 2011 to July 24, 2013.

### E.  Damages

#### 1.  Back pay

Having determined that Mr. Pau was entitled to $7.25 an hour under federal law and $8.25 an hour under state law, that he worked 80.5 hours per week, and that the relevant time period under the FLSA is June 10, 2011 to July 24, 2013 (a total of 110.5 weeks[6]) and under the CMWA is June 10, 2012 to July 24, 2013 (a total of 58.5 weeks[7]), the Court can now calculate the amount of back pay owed to Mr. Pau.

#### a.  Minimum Wage

Section 218(a) of the FLSA provides that "[n]o provision of [the FLSA] or of any order thereunder shall excuse compliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under [the FSLA]."  A careful reading of this section makes clear that while the FLSA explicitly disclaims preemption of state law, it does not *incorporate* state law.  *See Lanzetta v. Florio's Enterprises, Inc.*, No. 08 Civ. 6181 (DC), 2011 WL 3209521, at *4

---

[6] 29 weeks in 2011, 52 weeks in 2012, and 29.5 weeks in 2013.

[7] 29 weeks in 2012 and 29.5 weeks in 2013.

(S.D.N.Y. Jul. 27, 2011) (Chin, J.) ("Though [§ 218(a)] expressly defers to state wage laws affording employees greater protection, it does not also adopt such higher wages as the measure of damages for FLSA violations." (internal quotation marks omitted)); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) (same). To understand why this distinction is important, consider a Connecticut employer who pays her employees $7.25 per hour. That employer has violated state law, but she has not violated federal law. *Pineda-Herrera v. Da-Ar-Da, Inc.*, No. 09-cv-5140 (RLM), 2011 WL 2133825, at *5 (S.D.N.Y. May 26, 2011) ("[F]or non-overtime wages, the FLSA requires only that employers pay the minimum wage rates set by federal law.").

In this case, Defendant Chen has violated both federal and state law. But, because Plaintiff cannot recover under both statutes, the Court will award damages pursuant to the statute that provides the greater amount of damages. In making this determination, it is critical to recall that the CMWA provides a two-year statute of limitations while the FLSA provides, in this instance, a three-year statute of limitations. Thus, the Court compares the amount of back pay owed under the FLSA at $7.25 per hour for the period June 10, 2011 to July 24, 2013 with the amount of back pay owed under the CMWA at $8.25 per hour for the period June 10, 2012 to July 24, 2013:

<u>Under the FLSA</u>: $7.25/hr x 40 hrs/week x 110.5 weeks = $32,045

<u>Under the CMWA</u>: $8.25/hr x 40 hrs/week x 58.5 weeks = $19,305

As shown above, the FLSA provides for the greater remedy, so in calculating the amount of back pay owed to Plaintiff, the Court will use the FLSA rate.

### b.   Overtime

Unlike the minimum wage provisions of the FLSA, the regulations governing the overtime provisions of the Act expressly incorporate the state minimum wage.  Title 29 of the Code of Federal Regulations § 778.5 provides: "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of [state or local] legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."  Therefore, for purposes of calculating the amount of overtime owed to Plaintiff under federal law, the Court will use the higher state minimum wage as the "regular rate."  Plaintiff is thus entitled to 40.5 hours of overtime per week at $12.38/hour for 110.5 weeks, or $55,403.60.

### c.   Total Back Pay Owed

As shown below, by adding the total amount of straight time wages Mr. Pau should have received to the amount of overtime compensation he should have received, and subtracting from that total the amount of wages Mr. Pau actually received, the Court arrives at a back pay award of $31,348.85.

1. Total amount Mr. Pau should have received:

Straight time wages: $7.25/hr x 40 hrs/week x 110.5 weeks = $32,045.00

PLUS

Overtime: $12.38/hr x 40.5 hrs/week x 110.5 weeks = $55,403.60

TOTAL: **$87,448.60**

2.  Total amount Mr. Pau did receive:

$507.69/week x 110.5 weeks = **$56,099.75**

3. Total amount Mr. Pau is now owed:

$87,448.60 (Total from Step 1) – $56,099.75 (Total from Step 2) = **$31,348.85**

## 2.  Liquidated Damages

Both the CMWA and the FLSA permit a plaintiff to recover liquidated damages in an amount equal to his unpaid wages.  *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a); Conn. Gen. Stat. § 31-72.

Under the mandatory language of the FLSA, *see* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 . . . *shall* be liable to the employee" for "liquidated damages." (emphasis added)), "'[d]ouble damages are the norm, [and] single damages the exception,'" *Morales*, 2010 WL 7865081, at *8 (quoting *Reich,* 121 F.3d at 71).  Nonetheless, courts have discretion not to award liquidated damages, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260. "The employer has the burden to prove both subjective good faith and objective reasonableness." *Morales v. Cancun Charlie's Restaurant*, No. 3:07-CV-1836 (CFD), 2010 WL 7865081, at *8 (D. Conn. Nov. 23, 2010) (citing *Reich*, 121 F.3d at 71).  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  However, "[t]his burden 'is a difficult one to meet.'"  *Morales*, 2010 WL 7865081, at *8 (quoting *Reich,* 121 F.3d at 71).

20

The CMWA "provides for a discretionary award of double damages . . . to employees who are successful in actions against their employers for wages due. Although [the statute] does not set forth a standard by which to determine whether double damages should be awarded in particular cases, it is well established . . . that it is appropriate for a plaintiff to recover . . . double damages . . . only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness." *Ravetto v. Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 724 (2008) (internal quotation marks and citations omitted).

As the Court has already determined that Defendant Chen's violations of the law were willful, Mr. Pau is plainly entitled to liquidated damages. Defendant Chen does not claim to have taken any steps to attempt to comply with the FLSA or CMWA. Although he "claimed ignorance of the law [and] adherence to Chinese cultural practices, . . . demonstrating good faith requires more than the absence of intent or knowledge." *Solis*, 345 F. App'x at 39; *see Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986) (observing that "[a] good heart but an empty head does not produce a defense" against liquidated damages).

It does not necessarily follow from this, however, that Mr. Pau may collect liquidated damages under *both* the FLSA and CMWA. Courts in this Circuit agree that in general, "a prevailing plaintiff who can justify both federal liquidated damages and state-law damages should be eligible to recover both [where] they serve fundamentally different purposes," *Ke v. Saigon Grill*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008), but there is less agreement on the question of whether liquidated damages under the FLSA and the CMWA do serve different purposes, *compare Morales*, 2010 WL 7865081, at *9 ("[T]he

21

liquidated damages provisions in the FLSA and CMWA serve different purposes—the FLSA damages are compensatory and the CMWA damages serve a punitive purpose.") *with Andrade v. Kwon*, No. 08cv479 (SRU), 2012 WL 3059616, at *6 (D. Conn. Mar. 26, 2012) ("[E]ven though federal courts characterize [the] FLSA's liquidated damage clause as 'compensatory,' and Connecticut courts call the CMWA's clause a 'penalty,' both provisions serve a similar purpose—they deter employers from ignoring wage and hour laws, and raise the price for willful violations of those laws.").

Having reviewed the arguments for both positions, this Court is persuaded by the "considerable authority" finding that the FLSA and CMWA serve distinct purposes. *Tapia v. Mateo*, No. 3:14-CV-00247 (VLB), 2015 WL 1542727, at *4 (D. Conn. Mar. 31, 2015) ("While courts in this Circuit are split on the issue, there is considerable authority supporting an award of liquidated damages under both the FLSA and related state minimum wage statutes."); *see Rosendo v. Everbrighten Inc.*, No. 13CV7256 (JGK) (FM), 2015 WL 1600057, at *5 (S.D.N.Y. Apr. 7, 2015) ("A majority of the judges in this Circuit have taken the view that . . . simultaneous recovery is permissible because liquidated damages under the FLSA and the [state statute] serve different purposes.").

With regard to the FLSA, the United States Supreme Court has explained:

> [T]he liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages. It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being.  Employees receiving less than the statutory

> minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date. The same policy which forbids waiver of the statutory minimum as necessary to the free flow of commerce requires that reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707–08 (1945) (internal quotation marks, citations, and footnotes omitted); *see Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942) ("The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a) are compensation, not a penalty or punishment by the Government."). Liquidated damages under the FLSA are thus intended to be compensatory.

By contrast, the CMWA provides for liquidated damages as a penalty. "[T]he Connecticut Supreme Court has repeatedly stated that liquidated damages under the CMWA spring from a '*remedial statute*,' a 'primary purpose' of which is to '*penalize* the employers.'" *Velasquez v. U.S. 1 Farm Market, Inc.*, No. 13-cv-634 (CSH), 2013 WL 6195580, at *8 (D. Conn. Nov. 26, 2013) (quoting *Shortt v. New Milford Police Dept.*, 212 Conn. 294, 309 & 309 n.13 (1989)) (emphasis in original); *see Harty v. Cantor Fitzgerald and Co.,* 275 Conn. 72, 97 (2005) ("[I]t is clear that the purpose of damages under [the CMWA] extends beyond that afforded by common-law punitive damages, which are intended to do no more than make the litigant whole."); *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 272 (2003) ("We do not disagree that the double damages provision of [the CMWA] was intended to punish employers and make employees whole."). Indeed, in committee hearings held in 1978 to increase the penalties on employers, Senator Nancy L. Johnson remarked:

> The *penalty* for non-payment of wages is set forth in Section 31-72.  An
> unpaid employee must bring suit in court and if he or she wins, he or she
> recovers wages and [court] costs. This is hardly a sufficient *penalty* for so
> serious an *offense* as non-payment of wages.  In fact, the employer loses
> nothing but court costs, while the employee has to bring a suit and go
> without earned wages for months or years.   Section 31-72 should be
> amended to require an employer who fails to pay wages as provided by law
> shall be liable to the employee in the amount of their unpaid wages and in
> addition an equal amount of liquidated damages.

*Pereira v. DSL Net., Inc.*, No. CV 990428948, 2000 WL 1207269, at *4 n.5 (Conn. Super.

Ct. Jul. 28, 2000) (quoting Conn. Joint Standing Committee Hearings, Labor, 1978 Sess.,

pp 154–55) (alterations omitted and emphasis added).   Thus, while the practical effect of

both the FLSA's and CMWA's liquidated damages provisions may be to deter employers

from violating the law, they are in fact intended to serve fundamentally different

purposes, and for this reason, Plaintiff may recover liquidated damages under both the

FLSA and the CMWA.

### a.   Liquidated Damages under the CMWA

Under the CMWA, Mr. Pau is entitled to liquidated damages in the amount of

$18,947.45.  The Court's calculations in reaching this figure are below:

*1. Total amount Mr. Pau should have received:*

Straight time wages: $8.25/hr x 40 hrs/week x 58.5 weeks = $19,305

PLUS

Overtime: $12.38/hr x 40.5 hrs/week x 58.5 weeks = $29,331.32

TOTAL: **$48,636.32**

*2.  Total amount Mr. Pau did receive:*

$507.69/week x 58.5 weeks = **$29,688.87**

*3. Total amount Mr. Pau is now owed:*

$48,636.32 (Total from Step 1) – $29,688.87 (Total from Step 2) = **$18,947.45**

### b.   Liquidated Damages under the FLSA

Under the FLSA, Mr. Pau is entitled to liquidated damages in the amount of $31,348.85, as set forth below:

*1. Total amount Mr. Pau should have received:*

Straight time wages: $7.25/hr x 40 hrs/week x 110.5 weeks = $32,045.00

PLUS

Overtime: $12.38/hr x 40.5 hrs/week x 110.5 weeks = $55,403.60

TOTAL: **$87,448.60**

*2. Total amount Mr. Pau did receive:*

$507.69/week x 110.5 weeks = **$56,099.75**

*3. Total amount Mr. Pau is now owed:*

$87,448.60 (Total from Step 1) – $56,099.75 (Total from Step 2) = **$31,348.85**

### 3.   Final Damages Calculations

In sum, Mr. Pau is owed the following:

Back pay: $31,348.85

CMWA liquidated damages: $18,947.45

FLSA liquidated damages: $31,348.85

TOTAL = $81,648.15

### III.    Conclusion

For the foregoing reasons, the Court concludes that Mr. Pau has proved, by a preponderance of the evidence, that Defendant Chen violated the FLSA and the CMWA by failing to pay him minimum wage and overtime.  Accordingly, the Court awards Mr. Pau damages totaling $81,648.15, for which Defendant Chen is individually liable.

However, the Court also concludes that Plaintiff has failed to prove that Defendants New China King LLC and Ms. Zheng violated the FLSA and the CMWA.  He is therefore not entitled to any damages from Defendants New China King and Ms. Zheng.

The FLSA provides for the defendant to pay a successful plaintiff's reasonable attorney's fees and costs. 29 U.S.C. § 216(b).  Accordingly, Plaintiff shall submit his application for attorney's fees and costs no later than ten days after the date of this Ruling. Defendant shall submit any opposition within twenty-one days of the filing of Plaintiff's application, and any reply shall be filed within fourteen days thereafter.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of October, 2015.

26